## The State v. Warner.

Rape: ASSAULT WITH INTENT TO COMMIT : EVIDENCE.   In a prosecution for an assault with intent to commit a rape, evidence was introduced that the defendant, in a conversation before the alleged commission of the defense, stated, upon being asked if the prosecutrix was an unchaste woman, that he did not know, "but he was going over to try her, and if it was all right would tell them."   The defendant asked the court to instruct the jury, that, if defendant made the statement in fun or in jest, they ought to disregard it as tending to show defendant's guilt; which the court modified by adding, that it might be considered by the jury as evidence tending to show that the thought of *criminal* intercourse with the prosecutrix was in the defendant's mind.   *Held,* that the modification and the giving of the instruction as modified was, under the circumstances of the case, erroneous.

*Appeal from Henry District Court.*

FRIDAY, JUNE 26.

ASSAULT WITH INTENT TO COMMIT A RAPE: EVIDENCE: INSTRUCTIONS, ETC. — Defendant was convicted of an assault with intent to commit rape upon a Mrs. Caldwell.

On the trial the prosecutrix gave testimony tending to support the charge and identifying the defendant as being the person who made the assault.   It was made at night

in a room somewhat lighted by the moon (the light of which was admitted through a small aperture in the wall of the house), and by the remains of a small fire which had been made of light wood early in the evening.

The prosecutrix stated that her son, a boy about twelve years of age, identified the defendant as the man who effected an entrance into her house and who made the alleged criminal assault. The boy, though in the neighborhood, was not produced at the trial, nor any reason given or stated why he was not.

The prosecutrix stated that her person was bruised, and that she had communicated the circumstance of the assault the next day to her neighbors, but none of these were produced at the trial nor any reason stated for not so doing. The bill of exceptions recites that no witness but the prosecutrix gave testimony relating to the assault, and that the only other subject of inquiry before the jury upon the testimony, was a certain conversation of the defendant about a month before with two men named Fitch and Smith. The two men last mentioned were examined as witnesses and testified in substance as follows: That they and defendant were working upon the road when a shower drove them together under a tree for shelter. In the conversation which sprang up some one asked defendant if he was not going over to Mrs. W.'s (a place of questionable fame), and defendant replied that he had something better nearer home, referring, as the two witnesses understood, to Mrs. Caldwell, the prosecutrix. He was asked if he thought she was that kind of a woman, to which he replied he did not know, but he was going over to try her, and if it was all right he would tell them.

Defendant offered testimony tending to show that he was at his own house, one and one-half to two and one-half miles distant from the house of the prosecutrix at the time of the alleged assault. He made no effort to es-

cape.   The record is silent as to the character either of the prosecutrix or of the defendant.

.The principal error complained of relates to the instructions of the court respecting the circumstances testified to by Fitch and Smith; and the insufficiency of the testimony to justify the conviction of the defendant.

*Henry O'Connor*, Attorney-General, for the State.

*LeRoy G. Palmer* for the defendant.

DILLON, Ch. J. — Respecting the conversation testified to by Fitch and Smith (the entire substance of which is given in the statement), the court, at the instance of the *State*, instructed the jury as follows: "2. The jury, in determining the guilt or innocence of the defendant, should look carefully at the testimony of the prosecuting witness, as well as the testimony of all the other witnesses; and the declarations of the defendant, if any were made, as to his intention of going to Mrs. Caldwell's for the purpose of having criminal intercourse with her, should be considered by the jury in connection with all the other testimony, in determining the guilt or innocence of the defendant."

*RAPE: assault with intent to commit: evidence.*

Referring to the same conversation, the defendant asked the court to give the following instruction: "If the defendant used this language in rant, fun, jest or badinage, the jury ought to disregard it as tending to show defendant's guilt."

The court refused to give it as asked, but gave it with the following addition after the word "guilt," to wit: "but may be considered by the jury as evidence tending to show that the thought of criminal intercourse with the prosecuting witness was in the defendant's mind."

We think the modification was, under the circum-

stances, calculated injuriously to affect the defendant's case.

The State had obtained an instruction to the effect that the declarations of the defendant to Fitch and Smith "as to the intention of going to the house of Mrs. Caldwell, for the purpose of having criminal intercourse with her, should be considered by the jury, in connection with all the other testimony in the case, as determining the guilt or innocence of the defendant."

The leading thought in this instruction is not objectionable, as the effect of the circumstance referred to is left with the jury. But the use of the words "criminal intercourse," is hardly fair toward the defendant, for he did not declare his intention to commit the crime charged, but only an intention to go over and solicit her chastity, which, in the eye of the law, however reprehensible in morals, would alone be no crime at all, at least none partaking of the nature of that for which the defendant was on trial.

But, waiving this consideration, it was entirely proper, in view of the instruction which the court had given for the State on this subject, that the defendant should ask one as to the effect of the circumstance should the jury view it from his stand-point.

Accordingly, he asked the court to charge the jury, that, if he used this language "in rant, fun, jest or badinage, the jury ought to disregard it as a circumstance tending to show the defendant's guilt."

The court might properly, perhaps, have refused to say to the jury, that, even if spoken in jest, they should *wholly* disregard it; but to say, as it did, that, even if spoken in jest, it "may be considered by the jury as evidence tending to show that the thought of criminal intercourse with the prosecuting witness was in the defendant's mind," was an improper modification.

Can it fairly be predicated of a jest, that it tends to show that the thing spoken in jest was no jest at all, but was said in earnest?

If the defendant spoke what he did wholly in jest or fun, is this evidence tending to show that he had in his mind a serious thought of having criminal intercourse with the prosecuting witness?

Again, the proposition in the instruction as asked, and which was given, is not consistent with the proposition in the modification which was also given, thus making the instruction, as a whole, objectionable, as not embodying a plain and unambiguous statement of a rule or principle of law.

If the conversation in question was deemed of sufficient importance to be specifically mentioned to the jury, it would have been better to have told them in substance to consider when, where, and under what circumstances it occurred, and to give to it such weight as in their judgment it was entitled to, thus leaving its effect wholly to them.

The evidence of the identity of the defendant with the person who committed the assault, was the controverted point in the case.

Take the instruction as modified by the court, and it was in effect saying to the jury, that the declaration of the defendant, though not seriously spoken, though spoken in mere fun or jest, is yet evidence which tends to show that he was the person guilty of the outrage to which the prosecuting witness testified.

If the defendant's guilt was beyond all fair doubt, if all the testimony which it was within the power of the State to have produced had been given to the jury, and they, upon full consideration, had found him guilty, we might not have deemed it our duty to have reversed the judgment on account of the modification of the instruction.

But the charge in question, it is to be recollected, is easy to be made, and hard to be disproved. In saying this we intend no reflections, not the slightest, upon the prosecuting witness.

But it was due to the cause of justice, that the corroborating evidence clearly within the reach of the State should have been produced to the jury. Reference is here made more particularly to the testimony of her son and of her neighbors, to whom she made complaint, and, if such was the fact, showed the bruises on her person.

Considering the whole case, the judicial mind is better satisfied by reversing the judgment, that there may be another and more full investigation, than by affirming it, when, upon the record, although it does not profess to give all of the evidence in detail, but only the substance, and effect of all, we cannot but entertain serious doubts as to the identification of the defendant, and, consequently, as to the propriety of the conviction. We are all agreed, that it is our duty to grant the defendant a new trial, though Mr. Justice WRIGHT places his concurrence in this result rather upon the unsatisfactory nature of the evidence, and the absence of the corroborating testimony, which, it appears, was within the power of the State to have produced, than upon the instructions to the jury.

Reversed.